UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELIUS MANN,

    Plaintiff,

v.                                    Case No. 1:12-cv-750
                                                                        Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on February 12, 1962 (AR 150).[1] He alleged a disability onset date of December 19, 2007 (AR 150). At the administrative hearing, plaintiff amended the alleged onset date to May 15, 2009, the date on which he was involved in a motor vehicle accident (AR 19, 37-38). Plaintiff earned a GED while incarcerated and earned some college credits (AR 41-42, 148). In addition, plaintiff had vocational training in food service, custodial management, building trades and horticulture (AR 41-42, 148). Plaintiff identified his disabling conditions as degenerative arthritis, systemic tendonitis, fibromyalgia, anxiety disorder, and post traumatic stress disorder (PTSD) (AR 142). Plaintiff stated that due to these conditions he aches all of the time, his hands, arms, legs and back swell, and his hands go numb (AR 142). The administrative law judge (ALJ) reviewed

---

[1] Citations to the administrative record will be referenced as (AR "page #").

plaintiff's claim *de novo* and entered a written decision denying benefits on October 27, 2010 (AR 17-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of May 15, 2009 and that he met the insured status requirements under the Act through December 31, 2013 (AR 19). Second, the ALJ found that plaintiff has severe impairments of degenerative arthritis and antisocial personality disorder (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint(s) (due to any cause)), 12.04 (affective disorders), 12.08 (personality disorders) or 12.09 (substance addiction disorders) (AR 20).

The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, he can stand and/or walk or sit for about 6 hours with normal breaks. Climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling are occasional. The claimant is limited in reaching all directions, including overhead. Mentally, he has moderate limitations on the abilities to maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and to maintain attention and concentration for extended periods.

(AR 21). The ALJ also found that plaintiff is unable to perform any past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in both the regional economy (Michigan) and the national economy (AR 24-

4

25). Specifically, plaintiff could perform the following jobs: office cleaner (8,000 jobs in Michigan and 495,000 jobs nationally); food counter clerk (42,000 jobs in Michigan and 1,400,000 jobs nationally); machine operator (1,300 jobs in Michigan and 188,000 jobs nationally); and assembler (1,200 jobs in Michigan and 167,000 jobs nationally) (AR 24-25). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 15, 2009 (the amended alleged onset date) through October 27, 2010 (the date of the decision) (AR 25).

### III. ANALYSIS

Plaintiff raised four issues (with sub-issues) on appeal:

**A.  The ALJ's decision is not based on substantial evidence because he relied on the opinion of a DDS consultant whose opinion pre-dates plaintiff's onset date and who did not examine any records after December 2008, particularly those following plaintiff's May 2009 auto accident.**

    **1.  The ALJ's RFC determination and decision are not based on a review of the complete medical evidence.**

    **2.  The ALJ could not rely on the opinion of a non-examining physician where that physician was unable to explain inconsistencies (because the post-accident records did not exist when her opinion was rendered).**

As discussed, plaintiff originally identified his disability onset date as December 19, 2007, but later amended it to May 15, 2009, the date when he suffered injuries in a motor vehicle accident (AR 37-38, 150). Plaintiff's counsel amended the onset date at the administrative hearing, advising the ALJ that "in discussing it with [plaintiff], it seems that he was not, until the motor accident, disabled under the Act, being that he's under 50 -- up until that motor vehicle accident, he

was able to do some work on a full-time basis, although, not his then current job" (AR 37-38). In his decision, the ALJ viewed the amendment of the onset date as a concession that plaintiff was not disabled before May 15, 2009:

> Mr. Mann amended his alleged onset date to the date of his motor vehicle accident, May 15, 2009. The amendment of the allege onset date implicitly concedes that the claimant's impairments prior to May 15,2009 could not be reasonably considered disabling.

(AR 23).

Despite the fact that the ALJ viewed plaintiff as not disabled prior to the May 15, 2009, the ALJ determined plaintiff's residual functional capacity (RFC) based upon the opinion of Laura M. Rosch, D.O., a non-examining agency physician, who reviewed plaintiff's medical history on December 18, 2008, about five months before plaintiff's motor vehicle accident (AR 307-14). As of that date, Dr. Rosch found that plaintiff could carry twenty pounds occasionally and ten frequently, stand and/or walk or sit for six hours of an eight hour work day with normal breaks (AR 308). Plaintiff had postural limitations, i.e., he could never engage in work which involved balancing and could occasionally climb (ramps, stairs, ladders, ropes and scaffolds), stoop, kneel, crouch and crawl (AR 309). In addition, plaintiff was limited to reaching in all directions (including overhead) and had an environmental limitation which restricted him from even moderate exposure to hazards such as machinery and heights (AR 310-11). Dr. Rosch's opinion was based upon medical records from 2007 and 2008, and included a June 2007 MRI of plaintiff's shoulder that showed mild OA (osteoarthritis) of the AC joint (acromioclavicular joint) with tendinosis and partial tear of the distal cuff (AR 308-09, 314).

The ALJ addressed Dr. Rosch's opinion (referred to as Exhibit B10F) as follows:

> . . . A state medical consultant believed Mr. Mann was capable of standing/ walking or sitting for a total of about 6 hours in an 8-hour workday. The consultant pointed out that Mr. Mann was going to school and that a third party stated Mr. Mann stood most of the time and that he could walk a mile (Exhibit B10F).
>
> In sum, the above residual functional capacity assessment is supported by the Disability Determination Service's Physical Residual Functional Capacity Assessment (Exhibit B10F) and Mental Residual Functional Capacity Assessment (Exhibit B9F).

(AR 23). With the exception of the environmental limitations, the physical restrictions set forth by Dr. Rosch are the same physical restrictions as set forth in plaintiff's RFC (AR 21).

The gist of plaintiff's contention is that Dr. Rosch's December 18, 2008 opinion is not substantial evidence of his RFC, because the opinion did not reflect plaintiff's condition after he suffered injuries in the motor vehicle accident on May 15, 2009. In this regard, plaintiff contends that the ALJ erred in relying on Dr. Rosch's opinion to establish the RFC because significant medical evidence was developed following the accident which the doctor never reviewed. Plaintiff summarized this additional evidence as follows:

> [I]n September 2009, an MRI revealed disc protrusion at L5-S1, compromising both S1 nerve roots, worse on the right. (Tr. 352) An MRI of the cervical spine in October 2009 revealed left and paracentral disc osteophyte complex at C5-C6 and mild foraminal narrowing at C6-C7. (Tr. 350) The L5-S1 disc bulge remained constant, as indicated by a June 16, 2010 follow-up MRI. (Ex. l6F, p. 39) From May 2009 through September 2010, the Plaintiff's lower back pain continued to escalate, despite physical therapy and medication.
>
> Dr. Augustus Guerrero, M.D., a rehabilitation specialist, treated Plaintiff for chronic pain and back problems. On September 1, 2009, he found multiple tender points on Plaintiff's cervical spine and lower back, as well as on the paravertebral muscles of the cervical spine and mid-thoracic region. (Tr. 358) Plaintiff's lower back and S1 joints were tender on palpation. Dr. Guerrero placed Plaintiff on "off work" status from September 2009 through January 2010. (Tr. 348-352)
>
> Plaintiff's September 2009 MRI results showed a disc protrusion at L5-S1, compromising the S1 nerve roots on both sides. Dr. Guerrero administered trigger point injections in September and October 2009. He believed Plaintiff suffered from

7

posttraumatic myofascial pain syndrome (post accident) and Plaintiff remained restricted from work. (Tr. 349-50)

On November 24, 2009, Dr. Guerrero noted that Plaintiff had some decrease in his neck and back pain, but that he continued to walk slowly and he had good and bad days. On examination, he continued to have tenderness in his cervical and lower back areas. Plaintiff's posttraumatic myofascial pain syndrome had reached "maximum medical improvement," and that Plaintiff would continue with therapy pending his independent medical examination (by the auto insurer's physician). (Tr. 346-47)

Plaintiff was examined by Dr. Jeffrey E. Middeldorf, DC, DO, on January 13, 2010. On examination he had tenderness in his lower back on both sides and in the left trapezius area. A Gaenslen's test revealed some lower pack pain bilaterally. (Tr. 325) A left shoulder x-ray taken that day indicated minor degenerative changes of the acromion at the acromioclavicular joint. (Tr. 326) Dr. Middeldorf diagnosed degenerative changes to Plaintiff's left shoulder and C5-C6 and C6-C7 of his cervical spine (per 10/2/2009 MRI), and a right paraspinal disc protrusion at L5-S1 (per 9/2009 MRI). Dr. Middeldorf stated that Plaintiff was at his "maximal improvement through physical therapy and trigger point injections." (Tr. 327) Dr. Middeldorf also found that Plaintiff's history of fibromyalgia was a "negative factor in terms of recovery from the musculoskeletal injury." (Tr. 326, 328) He believed the accident had exacerbated Plaintiff's pre-existing conditions. (Tr. 319)

Despite physical therapy from April through June 2010, Plaintiff's back pain had been getting worse. His lower back pain radiated to his legs, which would go numb. He had chronic problems with balance. Dr. Ansorge ordered an MRI that revealed the "L5-S1 broad based eccentric disc bulge on the right paracentrally impinging on both S1 nerve roots," as in September 2009. (Tr. 383) In July 2010, Dr. Ansorge prescribed pool therapy in addition to Plaintiff's other physical therapy. Plaintiff treated with him on August 24, 2010 for stress and back pain. Dr. Ansorge continued to diagnose lumbar somatic dysfunction and he prescribed a cane due to Plaintiff's balance problems. Dr. Ansorge noted that the specialist (Dr. Hughes) was considering injections. (Tr. 369, 370, 374) In August 2010, Dr. Ansorge placed Plaintiff on an indefinite "no work" restriction. (Tr. 369)

When he treated with neurosurgeon Dr. Michael Hughes, Plaintiff demonstrated a loss of 50% range of motion (ROM) in his neck and had a marked reduction of ROM in his lumbar spine. He was moderately tender in his posterior cervical and post lumbar spine, and had back discomfort with straight leg raising at 90%. (Tr. 333-34) Based on a June 2010 MRI, Dr. Hughes found that Plaintiff continued to have the bulging disc that impinged on his S1 nerve root bilaterally, and that it remained unchanged from September 2009. (Id) He also noted cervical spondylosis with some narrowing of the canal. He diagnosed pain syndrome, marked

8

> impaired ROM of the postereocervical and lumbar spine. (Tr. 334) An August 23, 2010 x-ray confirmed mild degenerative changes at L5-S1 and multilevel cervical spondylolysis. (Tr. 338) He continued to treat Plaintiff on August 17 and 31 for lumbosacaral and postereocervical pain, and decided to try epidural steroid injections. (Tr. 331, 332)

Plaintiff's Brief at pp. 10-13.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the most you can do despite your limitations," 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1), and "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

Here, the ALJ's decision regarding plaintiff's RFC is not supported by substantial evidence. Although the ALJ reviewed plaintiff's medical records since his amended onset date (AR 21-24), he discounted these records and based plaintiff's physical RFC assessment on Dr. Rosch's opinion, an opinion which reflected plaintiff's condition in 2008 when, according to the ALJ, plaintiff's impairments "could not be reasonably considered disabling" (AR 23). In summary, the ALJ relied upon a physical RFC assessment which did not cover the relevant time period, did not incorporate the complete medical record, and by the ALJ's own reasoning, evaluated plaintiff's condition at a time when plaintiff was not disabled.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's RFC utilizing a

DDS RFC assessment which reflects plaintiff's condition after his May 15, 2009 motor vehicle accident.

### B. The ALJ failed to comply with 20 C.F.R. 404.1527 by failing to consider and/or accord adequate weight to [the] opinion of plaintiff's treating physician.

Plaintiff contends that the ALJ failed to accord proper weight to the opinions of treating physicians Dr. Ansorge and neurologist Dr. Hughes. Specifically, that the ALJ failed to give controlling weight to Dr. Ansorge's opinion that plaintiff was on indefinite "no work" status after the accident, the ALJ's failed to give controlling weight to Dr. Hughes' findings, and the ALJ's failed to explain the weight he gave to the opinions of these two physicians.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations

10

or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528.

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed these opinions as follows:

> Treating physician Peter Ansorge, M.D. wrote in a memorandum dated August 24, 2010 that Mr. Mann could not work and that the no work restriction was indefinite (Exhibit B15F). There was no specific rationale for the restriction provided in the memorandum or in Dr. Ansorge's office treatment records (Exhibit BI6F). He stated in a September 9, 2010 [sic] only that the claimant's back and neck pain was worsening (Exhibit B16F, p. 1).
>
> Michael Hughes, M.D. examined the claimant on August 3, 2010. He determined that Mr. Mann had a loss of 50% of the range of motion of his neck from cervical spondylosis and a marked reduction in the motion of the lumbar spine. There was bulging at L5-S1 with some impingement on the right S1 nerve root. Nonetheless, the claimant could perform straight leg raising to 90 degrees without difficulty (Exhibit 12F).

11

\* \* \*

> . . . No controlling weight is given Dr. Ansorge's statement in a memorandum dated August 24,2010 that Mr. Mann could not work and that the no work restriction was indefinite (Exhibit B15F). There is no supportive evidence provided for such a conclusive statement and it is not seconded by any other source.

(AR 23-24).

Dr. Ansorge's indefinite "no work" restriction (AR 364) is tantamount to a conclusion that plaintiff is unable to work. Although Dr. Ansorge was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). While the ALJ was not bound to accept Dr. Ansorge's opinion, he did not reject the opinion or give it any particular weight. Rather, the ALJ stated that he gave it "no controlling weight."

With respect to Dr. Hughes, the ALJ did not address the weight he gave to the doctor's opinions. For example, on August 3, 2010, Dr. Hughes stated that plaintiff had lost 50% of the motion in his neck and that he had disc bulging with impingement on the right S1 nerve root (AR 333-34). The ALJ's failure to determine the weight given to both Dr. Ansorge's and Dr. Hughes' opinions is contrary to the regulations, which require that the agency to determine the weight of opinion evidence provided by treating physicians:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Here, the ALJ has failed to determine the weight given to the opinions of Dr. Ansorge and Dr. Hughes as required by the regulations. Accordingly, on remand, the Commissioner should re-evaluate the opinions of both Dr. Ansorge and Dr. Hughes and explain the weight given to those opinions.

> **C. The ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence under 20 C.F.R. § 404.1520a and SSR 98-6p.**
>
> **1. The ALJ did not consider Physician Assistant Dawn Applegate's opinion in determining plaintiff's RFC.**
>
> **2. The ALJ failed to consider all of plaintiff's impairments in determining his RFC.**

The Court addressed the ALJ's RFC determination in § III.A., and, as discussed in that section, will remand this matter for re-evaluation of plaintiff's RFC on remand. In a related claim, plaintiff points out that the ALJ did not refer to the opinion of Dawn Applegate, a physician's assistant (PA) associated with Dr. Hughes' office, who prepared a Medical Examination Report for the State of Michigan Department of Human Services on September 9, 2010 (AR 342-43). In her report, PA Applegate stated that plaintiff had very limited range of motion in his back and neck, could occasionally lift less than 10 pounds, could stand and/or walk for less than two hours in an 8-

hour workday, and could not perform repetitive actions such as reaching, pushing, pulling or operating foot controls (AR 342-43).

PA Applegate's opinion is not the opinion of an acceptable medical source subject to controlling weight, *see* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), but rather the opinion from an other medical source. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (the Commissioner may use evidence from other medical sources such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists to show the severity of a claimant's impairment and how it affects the claimant's ability to do work). In Social Security Ruling (SSR) 06-3p, the Commissioner acknowledged that with the growth of managed health care in recent years, physicians' assistants and nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. For this reason, opinions from other medical sources, such as physicians' assistants and nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p.[2]

The failure to discuss a particular piece of evidence is not, in and of itself, an error requiring reversal. "Neither the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

(6th Cir. 2010). "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006), quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted).

In this case, however, it does not appear to the Court that the ALJ considered all of the evidence as a whole before reaching his decision denying benefits. As discussed, *supra*, the ALJ did not determine the weight assigned to the opinions of Drs. Ansorge and Hughes. Because PA Applegate worked in Dr. Hughes' office, her opinion could be relevant in evaluating plaintiff's impairment severity and functional effects. See SSR 06-3p. Accordingly, on remand, the Commissioner should evaluate PA Applegate's opinion consistent with the regulations and SSR 06-3p.

> **D. New evidence warrants changing the ALJ's decision, and plaintiff is entitled to a remand under sentence six of 42 U.S.C. § 405(g).**

Plaintiff seeks a sentence six remand so that the Commissioner can review new and material evidence. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

Here, plaintiff seeks a sentence-six remand with respect to exhibits which were submitted to the Appeals Council and which appear in the administrative record as Exhibits B10E and B18F. Exhibit B10 E consists of a brief submitted to the Appeals Council (AR 192-200), treatment notes from Dr. Guerrero (dated October 26, 2010) (AR 201-02), Dr. Ansorge's medical opinion regarding plaintiff's ability to do work-related activities (dated November 9, 2010) (AR 203-04), a statement from Dr. Ansorge explaining his November 9th opinion (dated November 24,2010) (AR 205-07), and emergency room records from Battle Creek Health System (dated November 4, 2010) (AR 209-12). Exhibit B 18F consists of office notes from Dr. Hughes (dated September 17 and 30, 2010) (AR 451-53).

In a letter to the ALJ dated October 21, 2010, plaintiff's counsel: noted that the ALJ had given counsel until that date to submit additional post-hearing evidence; advised the ALJ that he was still in the process of collecting the evidence; and requested that the record be left open until November 4, 2010 (AR 30). The record reflects that the ALJ entered the decision denying benefits on October 27, 2010 without responding to plaintiff's request.

As an initial matter, it appears that Exhibit B18F was incorporated into the medical record (AR 451-53). Therefore, this exhibit is not subject to the sentence six remand.

In his brief, plaintiff contends that the new evidence, consisting of Dr. Gerrero's office notes from October 26, 2010 office notes and Dr. Ansorge's opinions from November 2010, is material and that there is good cause for failing to include this evidence into the record. Plaintiff's Brief at pp. 17-18. Defendant does not dispute that this evidence is material, but opposes this request stating that "where the evidence has been submitted to the Appeals Council, and the Appeals Council reviewed the evidence, there is no cause for remand under sentence six." Defendant's Brief at p. 10. Defendant's contention is without merit. The determination of "good cause" under sentence six is not based upon the Appeals Council's prior review of the new evidence. Rather, "[a] claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing *before the ALJ*." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Here, plaintiff contends that he has established good cause because the records did not exist at the time of the ALJ's hearing. "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012). "This Court takes 'a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Id.*, *quoting Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir.1986).

With respect to Dr. Guerrero's office notes, the Court finds that plaintiff has shown good cause. These office notes involve the continued treatment of plaintiff's condition (AR 201-02).

17

As a patient, plaintiff had only limited control over the timing of this office visit which, in this case, happened to occur one day before the ALJ entered his decision. The same might be said for the late filing of Dr. Ansorge's opinions from November 2010. Plaintiff's counsel states that plaintiff was not able to meet with Dr. Ansorge until November 9, 2010, which prevented him from obtaining these opinions prior to the October 21, 2010 post-hearing deadline. Likewise, the emergency room records, such as those from Battle Creek Health System (dated November 4, 2010) (AR 209-12), generally are situational in nature where the timing of the emergency is usually not within the patient's control. Accordingly, plaintiff's request for a sentence-six remand will be granted with respect to Dr. Guerrero's October 26, 2010 treatment notes (AR 201-02), Dr. Ansorge's opinions from November 2010, and the Battle Creek Health System emergency room records. On remand, the Commissioner should review this new evidence.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's RFC utilizing a DDS RFC assessment which reflects plaintiff's condition after his May 15, 2009 motor vehicle accident, re-evaluate the opinions of Dr. Ansorge and Dr. Hughes, and evaluate PA Applegate's opinion pursuant

to the applicable regulations. In addition, the Commissioner's decision will be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for the purpose of reviewing the new evidence noted above. A judgment consistent with this opinion shall be issued forthwith.

Dated: September 27, 2013  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge